IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA                                                PLAINTIFF

v.                  Case No. 4:12-cr-00143-Dft. No. 5-KGB

MILTON L. LAWS, JR.                                                     DEFENDANTS

## ORDER

Before the Court is defendant Milton Laws, Jr.'s, motion to suppress his statements to Internal Revenue Service ("IRS") agents who executed a search warrant at the home of his mother, Brenda Laws. The motion to suppress was made orally on January 30, 2014. The Court determined the motion was untimely but that, in the interest of justice, the Court would hear the motion. The Court began a hearing on the motion that afternoon (Dkt. No. 180). The Court continued the hearing to the morning of January 31, 2014, to take additional testimony and to hear additional argument (Dkt. No. 183). The Court then issued a written order granting the motion to suppress (Dkt. No. 178). The government filed a motion for reconsideration of order granting motion to suppress and to reopen hearing (Dkt. No. 184), to which Milton Laws, Jr., responded in opposition (Dkt. No. 185). The Court heard argument on the motion and granted the government's motion for reconsideration, reopening the hearing (Dkt. No. 186). The Court heard additional testimony and argument on the motion to suppress the afternoon of February 5, 2014. For the reasons that follow, the Court denies Milton Laws, Jr.'s motion to suppress after reopening the hearing on the motion.

At the hearing conducted February 5, 2014, counsel for the government called Officer Zuber, Officer Freeman, Officer Hughes, Officer Tucker, Internal Revenue Service ("IRS") Agent Johns Williams, IRS Agent Elliott, IRS investigative analyst Moore, IRS Agent Bailey,

and IRS Agent Anderson to the stand.  Prior to testifying, IRS Agent Elliott had spoken to IRS Agent Coss, IRS Agent Spradlin, and IRS Agent Hogue, who is now retired.  Counsel for Milton Laws, Jr., called Felisha Walker to testify.  At the initial hearing, the government called only IRS Agent Bailey to the stand, and Milton Laws, Jr., called local police officer Williams and also testified himself.  The Court notes that IRS Agent Elliott has been present at counsel table throughout the course of trial.  IRS Agent Williams and IRS investigative analyst Moore have been in and out of the courtroom attending portions of the trial and perhaps portions of the suppression hearing.  Counsel for Milton Laws, Jr., objected to the presentation of testimony from these witnesses not otherwise subject to the rule.  Given the relaxed evidentiary standards that apply at suppression hearings, Fed. R. Evid. 104(a); *United States v. Matlock*, 415 U.S. 164, 173 (1974), the Court received such testimony.

The Court summarizes the evidence as follows.  Milton Laws, Jr., does not live at Brenda Laws's home.  Brenda Laws is Milton Laws, Jr.'s mother.  He was staying at her house because his house had been burglarized.  The record is unclear as to how long Milton Laws, Jr., had been staying at his mother's house.

Local police participated in executing the search warrant at Brenda Laws's home, including local Pine Bluff, Arkansas, police officers Zuber, Freeman, Hughes, Tucker, Williams, and very likely others.  The Court reaches the conclusion that other local police officers likely were involved for reasons explained in this Order.  Many, if not all, of the local police officers who assisted were narcotics officers.  The government maintains this was because IRS Agent Hogue worked on a particular type of drug task force with Officer Freeman.  The IRS wanted a local law enforcement presence when executing this warrant, and Officer Freeman volunteered to assist.

IRS Agent Rosemary Anderson, who is now retired, and a uniformed officer went to the door of the residence to serve the warrant. They were then followed by several local law enforcement officers and IRS agents. The number of officers is in dispute, but a conservative estimate is five or six local police officers along with nine IRS agents. All local police officers were in uniform. All who entered the residence to execute the warrant, except IRS investigative analyst Moore, were armed. Milton Laws, Jr., recalls ten officers and six or seven IRS agents present in the house with additional officers outside.

Officer Williams entered the residence when the search warrant was executed. He was posted by the backdoor in the kitchen along another officer. He testified that he and another police officer were stationed at the back door so that no one left. Throughout the execution of the warrant and search, there were officers inside and outside the residence.

Officer Hughes vaguely recalls the search. He does not recall the use of handcuffs or anyone being in handcuffs. He was a narcotics agent at the time of the search. He was not told why narcotics agents were asked to assist with executing this warrant, but he offered that they might have been chosen because of their familiarity with searches. He testified that a narcotics officer's standard operating procedure for executing a narcotics warrant would be to handcuff someone in the home at the outset for the duration of the search. When asked, he testified that whether a narcotics officer would have followed this standard operating procedure would depend on the briefing received prior to executing the warrant. Neither counsel for the government nor counsel for Milton Laws, Jr., asked what was discussed at the briefing conducted prior to executing the warrant to determine what standard operating procedure officers were directed to follow for the execution of the warrant. Officer Hughes could not recognize Milton Laws, Jr., at the hearing.

Officer Tucker recalls seeing no handcuffs and did not use handcuffs on anyone during the execution of the warrant. He went into the home after at least five other armed officers had conducted a safety sweep of the house. He did not recall having any contact with Milton Laws, Jr., that day, although he recognized Milton Laws, Jr., from having worked as a police officer in Pine Bluff.

Officer Freeman was on the scene when the warrant was served and entered the house after about five or six officers had entered and done the safety sweep of the house. He testified that the IRS agents and uniformed officers entered the house at the same time to execute the warrant. He viewed this as a document search. He did not remember any handcuffs being used. He recalls money being found and laid out on the washing machine. He does not recall any seizures or arrests at the scene. He does not remember having contact with Milton Laws, Jr., the day the warrant was executed.

Officer Zuber arrived at the scene the day this warrant was executed after initial entry into the residence had been made. He searched a vehicle in the yard. Nothing was found in that vehicle. He admits he did not enter the residence. He has no memory of anyone in handcuffs.

On the second day the court received testimony regarding this matter before entering its initial ruling, Milton Laws, Jr., testified that he was in a bedroom of the house with his girlfriend Felisha Walker when he was grabbed by two officers, with another two officers in the hall. Milton Laws, Jr., stated he was handcuffed at that point, taken into the kitchen, and told this was a search for drugs and that, if drugs were found, he would be charged. Milton Laws, Jr., claims that, while handcuffed, he was taken into the kitchen and that his pockets were emptied. The contents of his pockets were put onto the washing machine. He had cash—possibly $1,000—in his pockets. That money was put on the washing machine and ultimately returned to him and not

seized at the end of his questioning. Milton Laws, Jr., estimates he was in handcuffs for a half hour to an hour. Milton Laws, Jr., testified that the officers were armed, and carried walkie talkies. The record is unclear as to when, and under what circumstances, the cash was returned to Milton Laws, Jr.

Milton Laws, Jr., admits that he was uncuffed and then escorted from the kitchen to the IRS agents in the living room for the interview. He testified as to a recollection of being uncuffed after the search was complete and taken into the living room where he was with his mother and Felisha Walker. Milton Laws, Jr., maintains that he was not told he was free to leave at any point during this encounter. Milton Laws, Jr., does not recall IRS Agent Anderson or anyone else telling him he was free to leave. Milton Laws, Jr., claims he asked if he could leave and either received no response or was told he could not leave.

Several witnesses testified that, if Brenda Laws, Lareka Laws, Milton Laws, Jr., or Felisha Walker asked to use the restroom, they would have been escorted to the restroom by a law enforcement officer or IRS agent and that the restroom would have been searched before permitting any individual to use it. Felisha Walker was escorted to the restroom during the execution of this warrant. Essentially, as the Court understands it, any individuals in the residence would be escorted at all times as they moved about the residence. IRS Agent Anderson explained that, when executing a warrant, the IRS agents want to control the premises and the individuals inside of it. When asked how, if that is the case, an individual is free to leave, IRS Agent Anderson explained that either a law enforcement officer or an IRS agent would walk the individual to the door, if the individual requested to leave.

IRS Agent Ericka Johns Williams, who has attended and observed portions of the trial and attended at least part of the earlier suppression hearing, testified. She has been an IRS agent

for about nine years. She was on the scene when the warrant was executed at Brenda Laws's residence. She was armed that day. She entered the house approximately five or ten minutes after the first IRS agents and law enforcement officers did. She has no recollection of seeing Milton Laws, Jr., in handcuffs. She admits that she did not see him being taken out of the bedroom or searched. She recalls IRS Agent Anderson speaking to Milton Laws, Jr., Lareka Laws, Brenda Laws, and another woman all together, advising them that they were free to leave the premises but that, if they left, they could not return that day. She testified that it was standard operating procedure for the IRS to conduct such a meeting with occupants of the residence when a warrant is executed. She was cross examined on why IRS Agent Anderson's prosecution memorandum does not reflect that custodial or non-custodial rights were given to Milton Laws, Jr., and why Agent Anderson's prosecution memorandum specifically states that Agent Anderson had no contact with Milton Laws, Jr., on the day this search warrant was executed.

IRS investigative analyst Johnna Moore corroborates Special Agent Williams's recollection of events. However, IRS Agent Moore also has attended and observed portions of the trial and may have attended the earlier suppression hearings. She testified that her role is to take inventory of items seized during the search. She does not carry a weapon. She entered the residence approximately ten minutes after the entry team. She stated she would not have been called to the residence had Milton Laws, Jr., or anyone else been in handcuffs. When she arrived, she did not see Milton Laws, Jr., in handcuffs but did see a lot of money on the washing machine. She recalls IRS Agent Anderson speaking to Brenda Laws and Milton Laws, Jr., along with other individuals, to advise them they were free to leave but, if they left, they could not return while the warrant was being executed. She identified Brenda Laws and Milton Laws, Jr.,

by sight because she had been asked and had performed research on these two individuals prior to the execution of the search warrant.

IRS Agent Anderson testified. She was the first person into the house, along with a uniformed officer. She was not the person who patted down Milton Laws, Jr., or stayed with him in the kitchen. She did not remember who those individuals were. She did inform him, along with all other occupants of the residence, that they were free to leave but that, if they left, they could not come back while the warrant was being executed. She does not recall seeing Milton Laws, Jr., in handcuffs. She testified that, if the IRS agents handcuffed anyone, she would have to complete a use of force form. She was less clear on whether such a form, or any form, would be required to be completed by her if a local law enforcement officer handcuffed Milton L. Laws, Jr, during an IRS search. She testified that, if handcuffs had been used, she would have included that in a memorandum. Agent Anderson did not consider advising an occupant of the right to leave as advising of rights. She testified that the entire execution of the warrant process took approximately two hours.

Felisha Walker testified on behalf of Milton Laws, Jr. She testified that, when she was called out of the bedroom after law enforcement and IRS agents had served the warrant and begun to execute it, she was ordered into the kitchen. She testified that Milton Laws, Jr., was in the kitchen against the wall and police were searching his pockets and his shoes. She testified he was handcuffed. She does not recall the handcuffs being taken off him. She recalls going to the living room and then to the den in the house. She recalls being separate from Milton Laws, Jr., and the others during this process. She does not recall anyone telling her that she could leave. She also did not believe during this process that at any point she could walk out and not be arrested.

7

Milton Laws, Jr., claims the entire encounter took an hour to an hour and a half. This is not inconsistent with the IRS agents' account of the day. IRS Agents Bailey and Hogue, who by IRS Agent Bailey's account was a supervisory agent with the IRS at the time, and Milton Laws, Jr., were present in the room during the interview of Milton Laws, Jr.. Milton Laws, Jr., was not handcuffed when the IRS agents conducted the interview. Milton Laws, Jr., was sitting on the couch during the interview. Milton Laws, Jr., was not under arrest at the time of the interview.

IRS Agent Demetria Bailey was the only witness the government called at the first suppression hearing. The Court permitted the government's counsel to recall her to the stand. She testified at the second hearing that she was part of the entry team but was not the first person in the house. She was armed during the execution of the warrant and during her interview with Milton Laws, Jr. IRS Agent Bailey testified that she did not know Milton Laws, Jr., was going to be at the house at the time the search warrant was executed and that Milton Laws, Jr., was not a target of the investigation when IRS Agent Bailey came to the house to execute the search warrant. IRS Agent Bailey estimates that she was at the house ten or 15 minutes before she had physical contact with Milton Laws, Jr. At the most recent hearing, she said that she entered the house at 9:20, made contact with Milton Laws, Jr., at 10:10 and conducted a ten minute interview of Milton Laws, Jr. At the first hearing, IRS Agent Bailey testified that she did not know how long she had been there before she started to speak to him. IRS Agent Bailey does not know what was told to Milton Laws, Jr., prior to her contact with him in the living room; she does not know whether he was handcuffed prior to his contact with her in the living room. IRS Agent Bailey knows Milton Laws, Jr.'s pockets were emptied onto the washing machine near the kitchen but claims she was not present for that. IRS Agent Bailey testified that she had not detained him and that she had not seen him in handcuffs that day.

IRS Agent Bailey claims Milton Laws, Jr., was free to get up and leave at any point during the interview, although she does not recall that being said to him but claims that her supervisor, Mr. Hogue, may have said that. IRS Agent Bailey did not Mirandize Milton Laws, Jr. She testified Mr. Milton Laws, Jr., was not read his *Miranda* rights prior to being interviewed. During the interview, Mr. Milton Laws, Jr., did not answer every question; he did not answer when asked where the money in his pockets came from. IRS Agent Bailey did not arrest him at the end of the interview or at any point that day.

IRS Agent Dan Elliott testified on behalf of the government. IRS Agent Elliott has been at the government's table throughout most, if not all, of the trial. IRS Agent Elliott testified that he was the IRS team leader for this warrant, and yet he did not take the stand during the first suppression hearing. He testified that handcuffing during an IRS search warrant is unusual and that IRS standard operating procedure is to advise occupants that they are free to leave during execution of the warrant but that, if they leave, they may not come back while the search is ongoing. He explained that officers were posted at the doors of the residence to keep anyone from entering the residence during the search, as opposed to preventing the occupants from leaving as Officer Williams testified.

He offered that Milton Laws, Jr., was arrested nine times before this warrant was executed.[1]

Agent Elliott spoke with IRS Agent Carey Coss who remembered a black male being against a wall while others were seated but did not remember any handcuffs being used during the execution of the warrant. He also recalled IRS Agent Anderson telling the occupants of the

---

[1] Prior arrests have little, if any, probative value on this inquiry because whether an individual is in custody is not dependent on the individual's own subjective belief "but turns on whether a reasonable person in his shoes would have felt free to end the interview." *United States v. Ollie*, 442 F.3d 1135, 1137 (8th Cir. 2006).

house that they were free to leave but that, if they did leave, they could not come back. He spoke to IRS Agent Bobbi Spradlin who recalls walking into the kitchen and observing a black male with his hands behind his back but does not recall handcuffs on him. He also spoke to IRS Agent Hogue who had no specific recollection of the execution of this warrant and did not specifically recall anyone being in handcuffs that day.

He did not believe Milton Laws, Jr., was escorted from the bedroom. He believes he was kept in the kitchen to wait while a sweep of the residence was conducted and that two officers waited with Milton Laws, Jr., in the kitchen during that time. He could not recall who searched Milton Laws, Jr.'s pockets that day. He testified that, if Milton Laws, Jr., had that much cash in his pocket, an officer patting him down might suspect a weapon and conduct a *Terry* frisk.

Based on the evidence presented, the Court makes the following findings of fact and reaches the following conclusions of law. The search was conducted at Brenda Laws's house, although her son Milton Laws, Jr., had been staying with her there for some time.

Milton Laws, Jr., was handcuffed and his pockets were searched. Cash was removed from his pockets and placed onto the washing machine. The Court bases this determination on his testimony, the testimony of the local law enforcement officers who were narcotics officers, the testimony regarding how narcotics officers typically conduct searches, the testimony that a safety sweep was conducted, the fact that despite hearing from many local law enforcement officers and IRS agents the Court did not hear from those who searched Milton Laws, Jr.'s, pockets, and no one spoke with those officers who searched Milton Laws, Jr.'s, pockets and reported such a conversation to the Court.

Whether Milton Laws, Jr., was told he could leave the residence after being released from handcuffs is a difficult question. IRS Agent Anderson took the stand to explain her prior

10

testimony that she had "no contact" with Milton Laws, Jr., and to put a fine point on what the phrase "no contact" means to an IRS Agent. IRS Agent Anderson used the phrase "no contact" to describe her contact with Milton Laws, Jr., during the execution of the search warrant in her prior testimony in this proceeding and in her prosecution memorandum which describes the events that occurred during the execution of the warrant. Her prosecution memorandum is less than clear to the Court. At best, if the government account is to be believed, IRS Agent Anderson's written account of events may not be accurate, although various government witnesses attempted to make that written account consistent with the view that Milton Laws, Jr., received notice from IRS Agent Anderson that he was free to leave before being interviewed by IRS Agents Bailey and Hogue.

The Court has concerns that the two IRS agents called to the stand to corroborate that IRS Agent Anderson informed Milton Laws, Jr., and the other occupants of the house that they were free to leave are individuals who have attended portions of the trial proceedings and at least one of whom attended portions of the suppression hearing. This gives the Court some concern that their memories may have been clouded by the courtroom discussions of these events. Even with that, the Court determines it was standard operating procedure for the IRS to inform occupants of the residence that they were free to leave the residence during the search. Milton Laws, Jr., and Felisha Walker both testified to vague memories of a meeting in the living room of the residence. As a result, this Court concludes it is more likely than not that IRS Agent Anderson did inform the occupants of the home, including Milton Laws, Jr., that they were free to leave. The government prevails on this finding.

This Court has considered the *Griffin* factors. *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990). As for the first factor, the Court determines that Milton Laws, Jr., was told

he was free to leave after he was uncuffed and was allowed to leave at the end of the interview. As to the second factor, the inquiry requires the Court to determine whether the suspect possessed unrestrained freedom of movement during questioning. Milton Laws, Jr., was not handcuffed during questioning but instead was sitting on the couch, although the Court credits IRS Agent Anderson's testimony that individuals were not free to move about the house unescorted and the testimony that there was an armed police presence at the residence with officers inside, posted at the door, and outside. As to the third factor, the Court determines that Milton Laws, Jr., answered questions asked, although not all of the questions asked, and did not initiate the contact. The Court finds no evidence to support the fourth factor. As for the fifth factor, the Court concludes there was a police presence at the residence, with armed officers inside, posted at the door, and outside. As for the sixth factor, the Court determines that Milton Laws, Jr., was not arrested at the conclusion of the interview. The Court also notes that the interview itself was approximately ten minutes in length. *See United States v. LeBrun*, 363 F.3d 715, 723 (8th Cir. 2004) (taking note of the shortness of the interview in assessing whether the defendant was in custody).

With that, the Court determines that, based on controlling precedent, despite Milton Laws, Jr., being handcuffed and uncuffed before his interview, despite the law enforcement and IRS agent presence in the residence, despite that all law enforcement and IRS agents were armed, despite that the occupants of the residence were not free to move about the interior of the residence without a law enforcement or IRS agent escort as they moved about, and despite two officers posted by the back door of the residence, because this Court finds that it is more likely than not that IRS Agent Anderson informed the occupants of the house that they were free to leave after Milton Laws, Jr., was uncuffed, the Eighth Circuit is likely to view this as a situation

in which a reasonable person would have understood he was free to leave. *See, e.g.*, *United States v. Czichray*, 378 F.3d 822, 831 (2004). This Court will follow precedent and will not suppress Milton Laws, Jr.'s, statements made to IRS agents during his questioning at the home of Brenda Laws while the search warrant was executed. The government's motion for reconsideration of Order granting motion to suppress is granted (Dkt. No. 184).

SO ORDERED this 6th day of February, 2014.

*[signature: Kristine G. Baker]*

Kristine G. Baker
United States District Judge